1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   20827 North Cave Creek Road, Suite 101
3  Phoenix, AZ  85024

4  Telephone:  (602) 482-4300
   Facsimile:   (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Curtis Orr*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| Curtis Orr, | Case No. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT** |
| Life Insurance Company of North America, McKesson Patient Relationship Solutions, McKesson Corporation Employee Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Curtis Orr (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant McKesson Patient Relationship Solutions (hereinafter referred to as the "Company") sponsored, subscribed to and administered group disability insurance policies which were fully insured and administered by Life Insurance Company of North American (hereinafter referred to as "LINA"). LINA is a wholly owned subsidiary of the Cigna Corporation. The specific LINA short term disability policy is known as group policy SHD 0800015. The specific LINA long term disability policy is known as group policy LK 0980041. The Company's purpose in subscribing to the LINA policies was to provide disability insurance for its employees. Upon information and belief, the LINA policies may have been included in and part of the McKesson Corporation Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policies to LINA. Plaintiff believes that as it relates to his claim, LINA functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6. The Company, Plan and LINA conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policies and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policies pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in his designated occupation as a Director of Operations on or about September 20, 2008. Plaintiff has remained disabled as that term is defined in the relevant policies continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff applied for short term disability benefits under the relevant LINA policy, which were awarded through January 16, 2009.

11. The relevant LINA short term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

> Inability to perform all of the material and substantial duties of the covered employee's occupation on an active employment basis because of injury or sickness.

12. Plaintiff also applied for long term disability benefits under the relevant LINA policy.

13. The relevant LINA long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular Occupation; and
>
> 2. unable to earn more than 80% or more of his or her Indexed Earnings from working in his or her Regular occupation.
>
> After Disability benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to injury or sickness, he or she qualifies for disability benefits from the Social Security Program. If Employee does not qualify solely because of age, he or she is Disabled if they would otherwise qualify for those benefits.

14. In support of his claims for short and long term disability benefits, Plaintiff submitted medical records to LINA from his treating physicians which supported his allegation he met the relevant definition of disability in the aforementioned policies. Specifically, Plaintiff's primary care physician provided LINA with an October 14, 2008, November 12, 2008, December 23, 2008, January 20, 2009 and February 11, 2009 Disability Management Solutions Medical Request Form stating it was impossible for Plaintiff to work for at least the next six (6) months.

15. In a letter dated February 12, 2009, LINA notified Plaintiff it was denying his claim for long term disability benefits after it erroneously concluded he failed to provide sufficient evidence to support the severity of his serious medical conditions. In the denial letter LINA failed to provide a full and fair review pursuant to ERISA because it failed to reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's evidence which adequately documented his serious medical conditions and supported the fact Plaintiff meet the definition of disability on both aforementioned policies.

16. In a letter dated February 16, 2009, LINA also notified Plaintiff it was denying his claim for continued short term disability benefits beyond January 16, 2009,

-4-

after again erroneously concluding he failed to provide sufficient evidence to support the severity of his serious medical conditions. LINA's denial letter denied Plaintiff of a full and fair review for the reasons set forth *supra*. In addition, LINA's February 16, 2009 denial letter was erroneous and unlawful because Plaintiff's medical condition had not improved in any meaningful way which would have allowed a return to work[1] from the time LINA originally evaluated and approved his claim for short term disability benefits.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the February 12, 2009 and February 16, 2009 denials of his claims for disability benefits on August 5, 2009. In support of his appeals, Plaintiff submitted additional medical information and lay affidavits to LINA demonstrating his total disability as defined in the relevant aforementioned policies.

18. In support of his short and long term disability claims, Plaintiff submitted to LINA a May 7, 2009 Functional Abilities Evaluation performed by a qualified physical therapist. The Functional Abilities Evaluation determined that Plaintiff was "unable to perform sedentary work consistently nor on any regular full-time basis." Plaintiff also submitted a July 21, 2009 narrative letter from his primary care physician who concluded to "a high degree of medical probability" Plaintiff "is disabled and cannot perform any work, part time or otherwise," "may not be able to return to gainful employment" and is not "malingering or exaggerating his problems." Plaintiff further submitted a July 23, 2009

---

[1] *See McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586 (8th Cir. 2002) (holding that once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable); *see also Regula v. Delta Family-Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001), *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); and *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001) (holding that the burden is placed on insurer to establish claimant's ability to work).

1 narrative letter from another treating physician whom concluded, based on "many objective findings" Plaintiff "has been unable to work in any occupation since September 20, 2008."

19. In further support of his appeals, Plaintiff submitted a Vocational Report dated July 29, 2009 prepared by a qualified vocational rehabilitation and labor market consultant, which concluded that Plaintiff "is unable to engage in any form of competitive employment as a result of his medical condition." The Vocational Report further concluded that Plaintiff "meets the requirements for disability as defined by the Social Security Administration and the Cigna Plan…" Plaintiff also submitted a June 8, 2009 Affidavit attesting that Plaintiff's medical conditions prohibit him from working any job. Plaintiff further submitted a July 17, 2009 Affidavit attesting he was not able to engage in any occupation due to his serious medical conditions. In addition, Plaintiff submitted a sworn Affidavit dated July 30, 2009 which states "at this point in time, no reasonable accommodations can be made to enable [Plaintiff] to consistently perform the duties of any job."

20. As part of its review of Plaintiff's claims, LINA referred Plaintiff's claims to MES Solutions ("MES"), a third party vendor, in order to obtain a medical review by an alleged independent physician.

21. Upon information and belief, MES declares on its website [2] to be in the business of providing claim review services to the disability insurance industry and is the nation's "largest" and "most experienced" claim review service provider available:

National Leader in Independent Evaluation Services.

Largest and most experienced independent medical evaluation and peer review company in the nation.

---

[2] *See* www.mesgroup.com

22. Upon information and belief, due to its extensive business relationship with the disability insurance industry and possibly LINA, Plaintiff believes the involvement of MES in the review of his claims presents a conflict of interest and is a reason his claims were denied and why he did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1. Due to the nature of MES' relationship with the disability insurance industry and LINA's reliance on MES, Plaintiff questions the objectivity and impartiality of LINA, MES and any individual retained by LINA and/or MES to review his claims and provide a full and fair review.

23. MES and LINA's conflicts of interest are evident in the October 22, 2009 and January 6, 2010 Peer Review Reports authored by MES contractor John L. Brusch, M.D., who was retained to alleged provide a medical records only review of Plaintiff's claims.

24. Upon information and belief, based on a cursory review of the LEXIS legal database,[3] Plaintiff believes Dr. Brusch may be a long time consultant for the disability insurance industry, including companies such as MES and other similar insurance industry related entities and therefore, Plaintiff believes Dr. Brusch's review of his claims is a conflict of interest and a reason his claims were denied and he did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

25. In his October 22, 2009 report, Dr. Brusch did not examine Plaintiff and his opinion Plaintiff was not disabled was based entirely on a selective review of the evidence which actually supported Plaintiff's claims. Dr. Brusch's review of Plaintiff's medical records was flawed because it was selective and sought to de-emphasize evidence Plaintiff

---

[3] *See Harrison v. Catholic Healthcare West Group Long Term Disability Plan*, 612 F.Supp.2d 1099 (C.D. Cal. 2009); *Gent v. CUNA Mut. Ins. Soc'y*, 2008 US Dist LEXIS 66467 (D. Mass); and, *Goodman v. Hartford Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 105982 (E.D. AR.)

1  submitted which proved he was disabled in order to provide a reason for LINA to justify a
2  denial of his claims.

3     26.   Upon information and belief, Plaintiff believes Dr. Brusch may have an incentive to protect his own consulting relationships with the disability insurance industry by providing medical review reports which selectively review and ignore evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as LINA and which supported the denial of Plaintiff's claims. Plaintiff believes Dr. Brusch's review of his claims presents a conflict of interest and is a reason his claims were denied and he did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

11     27.   LINA requested that Plaintiff's primary care physician respond to several questions prepared by Dr. Brusch. This physician did so on December 8, 2009, confirming that Plaintiff did suffer from a serious medical condition supported by objective medical findings without any evidence of malingering.

15     28.   Dr. Brusch submitted a supplemental January 6, 2010 Peer Review Report again erroneously concluding Plaintiff's medical records did not support his inability to work full time in his own occupation. Plaintiff believes Dr. Brusch's January 6, 2010 report is flawed for the same reasons as set forth herein with regard to his October 22, 2009 report which is incorporated by reference.

20     29.   Notwithstanding the evidence supporting his claims, LINA notified Plaintiff in a letter dated January 13, 2010 it was denying his claims for continued short term disability benefits beyond January 16, 2009 and for long term disability benefits after it erroneously concluded he failed to provide sufficient evidence to support the severity of his serious medical conditions. In denying Plaintiff continued short term disability benefits and

all long term disability benefits, LINA relied extensively on the peer review evaluations performed by Dr. Brusch.

30. LINA's January 13, 2010 denial failed to provide Plaintiff with a full and fair review by failing to properly investigate his claims in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it again completely failed to reference, consider and/or selectively reviewed most if not all of his evidence which adequately documented continued support of the fact that his medical conditions had not improved and he continued to meet the relevant definitions of disability. LINA denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the limitations set forth in his medical evidence, failing to obtain a peer review evaluation from a disinterested, qualified physician, failing to evaluate the combination of all of Plaintiff's serious medical conditions and failing to request Plaintiff undergo an independent medical examination as allowed in the relevant policies.

31. LINA's determination was also erroneous and unlawful because Plaintiff's medical condition had not improved in any meaningful way which would have allowed a return to work from the time it originally evaluated and approved his short term disability claim; *to wit*, Plaintiff remained unable to engage in his own occupation.

32. Plaintiff believes a reason his claims were denied, notwithstanding LINA's original approval of his short term disability claim, is because LINA's liability to Plaintiff pursuant to the long term disability policy was significantly larger in dollar terms as compared to its liability under the short term disability policy.

33. LINA has notified Plaintiff he has exhausted his administrative appeals.

34. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do.[4]

35. Plaintiff believes a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is the reason his disability claims were denied.

35. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINA and any individual who reviewed his claims and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny his claims.

36. With regard to whether Plaintiff meets the definition of disability set forth in the relevant policies, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by LINA as referenced herein are flagrant.

37. As a direct result of LINA's decision to deny Plaintiff's disability claims he has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

---

[4] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)). It further supplements marketplace and regulatory controls with judicial review of individual claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

Case 2:10-cv-00562-GMS   Document 1   Filed 03/12/10   Page 11 of 12

38. The evidence supports a finding that Plaintiff meets the definition of disability for the short term disability claim as well as the "own" and "any" occupation definitions of disability in relevant long term disability policy. Therefore, Plaintiff is entitled to benefits pursuant to the short term policy as well as the "own" and "any" occupation definitions of disability in the long term disability policy. As a result of Defendants' decision that he did not meet the less restrictive "own" occupation definition of disability in the short and long term disability policy, it is or was administratively futile for Plaintiff to have sought a determination from Defendants with regard to whether he met the definition of disability for "any occupation" benefits in the long term disability policy.

39. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

40. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff all short term disability benefits due as a result of being found disabled pursuant to that policy from the date he was first denied these benefits as well as an Order that Plaintiff meets the "own" and "any" occupation definitions of disability in the long term disability policy through the date of judgment and prejudgment interest thereon. Plaintiff also seeks an Order that he is entitled to any other employee benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the Plan or policy conditions for termination of benefits;

1     C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

    D.    For such other and further relief as the Court deems just and proper.

DATED this 12th day of March, 2010.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff